UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17 CR 273 RLW / DDN |
| ) | |
| NAKIA PHILLIPS, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court on the pretrial motions of the parties, which were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Those motions are the oral and documentary motions of defendant Nakia Phillips to suppress evidence (Docs. 17, 24), and the oral motion of the United States for a determination by the court of the admissibility or not of any arguably suppressible evidence (Doc. 18). An evidentiary hearing was held on October 2, 2017.

From the record adduced at the evidentiary hearing and from a review of the record of this action, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. After pleading guilty to one count of failing to register as a sex offender, on November 1, 2012, defendant Nakia Phillips was sentenced in this court by District Judge John A. Ross in Case No. 4:12 CR 161 JAR to imprisonment for 24 months and a term of supervised release for 10 years. (No. 4:12 CR 161, Doc. 44).

2. a. On April 30, 2014, the sentencing judge, following a final revocation hearing, determined that defendant violated the conditions of his supervised release, revoked his release, and sentenced him to additional imprisonment for 24 months and supervised release for life. (*Id.* at Docs. 64 and 65). At the final revocation hearing,

defendant waived his right to require the government to prove he violated certain alleged conditions of supervised release; he admitted he committed violations by working at a shopping mall without notifying the Probation Office, failing to register as a sex offender (which is a new criminal offense), having contact with children without notifying the Probation Officer, and being at a library with a child without the permission of his Probation Officer.  (*Id.* at Doc. 73 at 4-25).  Among the "Additional Supervised Release Terms" imposed on April 30, 2014, were the following:

> 8. The defendant shall submit his person, residence, office, computer,[1] or vehicle to a search, conducted by the probation office based upon reasonable suspicion of contraband or evidence of a violation of a condition of release.  The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.
>
> 9. **The defendant shall not possess or use any audio/visual recording or producing equipment, a computer, peripheral equipment, gaming equipment, cellular devices, or any other device with access to any "on line computer services," or subscribe to or use any Internet service, at any location (including employment) without the written approval of the probation office.**  If approval is given, the defendant shall consent to the probation office or probation service representative conducting unannounced examinations, including retrieval and copying of all data, of any computer(s) or computer related equipment to which the defendant has access, including web enabled cell phones and gaming systems to insure compliance with this condition and/or removal of such equipment for the purpose of conducting a more thorough inspection.
>
> * * *
>
> 11. The defendant shall advise the probation office of all computers, electronic equipment, and web enabled equipment, including cell phones, to which he possesses or has access within 24 hours of obtaining same.

---

[1] The U.S. Probation Office has interpreted the definition of "computer" to include any device that is capable of accessing the internet, including "smart phones," which are cellular telephones with this capability.  When she explained the special conditions of supervised release, Probation Officer Lisa Haar told defendant Phillips that he could not have a smart phone without her permission.  When she had this conversation with Phillips, Haar was unaware that Phillips then already had a smart phone.  She believed he had only a phone that could not access the internet.

(*Id.* at Doc. 65 at 5) (bolding added).  During the revocation sentencing proceedings on April 30, 2014, Judge Ross orally reviewed these conditions of supervised release with Phillips.  (*Id.* at Doc. 73 at 45).  Thereafter, defendant appealed certain conditions of supervised release imposed by the court.

      b.      On May 5, 2015, the United States Court of Appeals for the Eighth Circuit affirmed the lifetime term of supervision, but vacated the special condition[2] that defendant not possess or use a computer, gaming equipment, a cellular device, or subscribe to any internet service without the approval of the Probation Office.  (*Id.* at Doc. 77).

      c.      On August 11, 2015, upon remand of the case from the Court of Appeals, with no further evidentiary hearing (*id.* at Doc. 86), Judge Ross issued an amended judgment following revocation.  The amended judgment did not include any of Additional Supervised Release Term No. 9, quoted above, which included the provision that had been vacated by the Court of Appeals.  (*Id.* at Doc. 87 at 5).  The amended judgment did, however, include the following originally imposed additional terms of supervised release:

> 8.    The defendant shall submit his person, residence, office, computer, or vehicle to a search, conducted by the probation office based upon reasonable suspicion of contraband or evidence of a violation of a condition of release.  The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.
>
> 9.    The defendant shall consent to having installed on the computer(s), at the defendant's expense, any hardware or software systems to monitor or filter computer use.  Prior to installation of any such systems, the defendant shall allow the probation office to examine the computer and/or electronic storage devices(s).  The defendant shall warn any other residents, employers, or family members that the computer(s) and any related equipment may be subject to searches pursuant to this condition.

---

[2] *See* the bolded language in Additional Supervised Release Term No. 9, quoted above.

3

>10. The defendant shall advise the probation office of all computers, electronic equipment, and web enabled equipment, including cell phones, to which he possesses or has access within 24 hours of obtaining same.

(*Id.*)

3. After defendant Phillips was released from imprisonment, on November 13, 2015, he reviewed his conditions of supervised release, including Special Condition No. 8, regarding searches by the Probation office, with his newly assigned supervising Probation Officer, Lisa Haar. In this meeting, both Phillips and Haar signed the Additional Supervised Release Terms document. (Gov. Ex. 3 at 5; Doc. 37 at 5). Throughout his probation office supervision, Phillips was subject to the Standard Condition of Supervised Release that he "shall not commit another federal, state, or local [crime]." (Gov. Ex. 3 at 4).

4. From November 13, 2015, to September 7, 2016, Probation Officer Haar knew of no "smart phone," capable of accessing the internet, possessed by Phillips. If she had known he had such a phone, she would have directed him to install software on it so that his use of the phone could be monitored.

5. On September 7, 2016, Probation Officer Haar received a phone call from Farmington, Missouri Police Detective Timmeray Porter. Det. Porter told Ms. Haar that the police were initiating an investigation of Phillips for sexual assault with a gun on a female minor who was hospitalized. At that time, Phillips was living in Farmington. When he called Haar, Det. Porter had not yet interviewed the victim. Later that day, Ms. Haar made phone calls in an effort to confirm that defendant Phillips was employed. She knew he had reported he had two jobs. However, when she called she learned he had quit one job on August 18 and the other on August 10. She also learned he had been rehired by the second employer on August 12 at another location. Phillips had not reported these employment changes to Probation Officer Haar, as required by his conditions of supervised release.

4

6. Later on September 7, 2016, Det. Porter interviewed the female 15-year-old victim at the Farmington Police Department. The victim told Porter the following. On August 10, 2016, she got a ride from Phillips supposedly to go to a relative's house. She ended up staying with Phillips in his apartment until September 7, 2016. She told Porter that Phillips displayed a firearm, threatened her, would not let her leave, and forced her to have sexual intercourse with him. Also, she told Porter that Phillips took her to St. Louis and forced her to prostitute herself. She told Porter that Phillips had a "flip phone," which was used to communicate with his probation officer, and a ZTE brand phone in a case. **Phillips used the ZTE phone to take photos of her, both still photos and videos, that were used to advertise her as a prostitute. Porter believed that her statements also involved child pornography.**

7. After Det. Porter's interview of the victim, Farmington Police Lieutenant Jeff Crites went looking for Phillips at Phillips' apartment in Farmington. At that location, Crites saw Phillips loading items into his car. Crites called Porter who directed Crites to make contact with Phillips. Lt. Crites attempted to stop Phillips' car with his lights and siren, but Phillips drove away at a high rate of speed. Crites lost contact with Phillips, but other law enforcement picked up the pursuit. Phillips was stopped in Jefferson County when the tires of his car were flattened. Phillips was arrested and his car was towed to a lot in St. Francois County.

8. Thereafter, Phillips was interviewed in the St. Francois County Jail by the Federal Bureau of Investigation and other law enforcement officers, including Det. Porter. When he interviewed Phillips, before he asked him questions, Det. Porter first advised him of his constitutional rights to remain silent and to counsel, pursuant to *Miranda v. Arizona*. This interview was audio and video recorded.[3]

9. Later on September 7, 2016, Probation Officer Haar learned that the Farmington police interviewed the victim in the hospital. In this interview, the victim identified Phillips from a photo array as the person who made arrangements for her to

---

[3] The record of this interview was not offered into evidence during the suppression hearing.

5

have sexual contact with other men in exchange for money. Thereafter, the police arrested Phillips.

10. Thereafter, also on September 7, 2016, in Case No. 4:12 CR 161, District Judge John A. Ross ordered the issuance of an arrest warrant for defendant Nakia Phillips, upon the petition of Probation Officer Lisa Haar that the supervised release of defendant Phillips be revoked. The alleged violations of his conditions of supervised release included Phillips failing to advise the probation officer that he had made changes in his employment; Phillips being investigated by the Farmington, Missouri police for a "possible sexual assault of a 15 year old female; his May 5, 2016, polygraph statement that he had had contact with his twelve year old son on two occasions; his May 25, 2016, unsuccessful discharge from the Southeast Missouri Behavioral Health Center (SEMO); and an incident at SEMO involving a female resident complaining that Phillips approached her to have sexual relations with him. (No. 4:12 CR 161, Doc. 95).

11. On September 8, 2016, pursuant to Farmington Police Department policy, Lt. Crites did an inventory search of Phillips' car, which had been locked in a secure building in Leadington, Missouri, three miles south of Farmington. In his inventory search of the Phillips' car, Lt. Crites found and seized three cell phones, *i.e.*, an LG flip phone, a ZTE phone, and Logic brand phone. They were secured as evidence by the Farmington Police Department.

12. On September 12, 2016, Det. Porter participated in a search of the apartment residence of Nakia Phillips, pursuant to a search warrant issued by a Missouri state court judge. When the officers entered the apartment, it appeared to be vacated. The officers found no firearm or ammunition there.

13. On October 21, 2016, Det. Porter applied for and received from the Circuit Court of St. Francois County a search warrant for three specifically identified cellular telephones. (Gov. Ex. 1; Doc. 37). In support of his application, Det. Porter submitted his written, sworn affidavit, which stated the following. Det. Porter, during his 21 years of police experience, has been trained and certified in the extraction of data from cellular devices. On September 7, 2016, he became aware of an investigation of the rape of a 15-

6

year-old female, identified in the affidavit as "SJ." Det. Porter included in the affidavit statements made to him by SJ.[4] Her statements included her involvement with 37-year-old Nakia Mack Phillips. SJ told Porter that Phillips picked her up on August 10, 2016, and took her to his apartment. Between August 10 and September 7, he forced her to have sex with him, including when she was unconscious on the backseat of his car, and he took her to a hotel near the St. Louis airport where he photographed her without clothes for advertising on the internet her availability to have sexual relations with paying customers. Between August 10 and September 7, Phillips allowed SJ to go home so she could attend school; during this period he constantly communicated with her by a phone he provided her.[5] SJ told Porter that Phillips had two mobile phones, one a ZTE in a case, and the other a "flip-phone" Phillips used to communicate with his probation officer. SJ told Porter that the phone Phillips gave her was then in his car. On September 7, 2016, Det. Jeff Crites attempted a traffic stop of Phillips in Farmington. Phillips did not yield to the emergency lights and siren, but fled. He was arrested in Jefferson County and his vehicle was towed to an impound lot. There Phillips's car was searched and three cell phones were seized from it by Det. Crites. Det. Porter stated in his affidavit that he believed these cell phones contained photos of SJ without clothes; communications between her and Phillips; and a video of SJ without pants, unconscious and not breathing. On October 21, 2016, at 9:31 a.m., a Missouri Circuit Judge issued a warrant to search the three specifically described cell phones. (*Id.*).

14.     On October 21, 2016, Det. Porter executed the search warrant by doing a forensic examination of the three cell phones. On the ZTE phone, he used a specific digital search application. He did a logical extraction of data from this cell phone. By

---

[4] Before his interview with SJ, Det. Porter had been trained in interviewing child victims of sexual activity. During this interview, SJ gave him no self-contradictory information.

[5] Det. Porter's affidavit also stated that during a consensual search of another cell phone, belonging to TB, a 16-year-old juvenile, Porter learned that Phillips conversed with TB by text messages about his having sex with TB.

7

this method he located photos and text on the phone.  During this period, the state of Missouri brought criminal charges against Phillips.

15.	On January 20, 2017, defendant Phillips was arrested on the federal supervised release revocation warrant, issued by District Judge Ross in Case No. 4:12 CR 161 on September 7, 2016.

16.	On February 6, 2017, Probation Officer Haar, Assistant United States Attorney Tracey Berry, and Steven Holmes, who provided forensic expert services to the Probation Office, met with Det. Porter in the federal courthouse in St. Louis and received from him three cell phones that had been in the possession of Nakia Phillips and that Porter had searched.  At that time, Ms. Haar knew of only one cell phone that Phillips possessed, a phone that could not access the internet.  Porter gave the three phones to Holmes for analysis.

17.	During this meeting, Det. Porter told Probation Officer Haar that the material he downloaded from the cell phones included photos of the female juvenile victim and text messages.  This material corroborated the fact that the female victim and Phillips had a relationship of some sort.  Det. Porter also told Probation Officer Haar that the material on Phillips' phones indicated child pornography and prostitution.

18.	Thereafter, Holmes, on behalf of the U.S. Probation Office, in the implementation of Phillips' condition of supervision No. 8, quoted above in Finding No. 2(c), did a forensic search of the three Phillips phones.  The purpose of this search was to look for evidence of illegal activity, Phillips' involvement with the subject minor female.[6]  In his search, Holmes found items of evidence that indicated the presence of child pornography, including prostitution activity involving at least one minor individual, drug activity, and Phillips directing the minor to pose for sexually explicit photos for posting on internet websites.

19.	On February 3, 2017, defendant waived his rights to a detention hearing and a probable cause hearing in the supervised release revocation matter.  (No. 4:12 CR

---

[6] Previously, Det. Porter told Probation Officer Haar that the minor female had told him that Phillips had taken a nude photo of her with a cell phone.

8

161, Docs. 107, 108). The final supervised release hearing was reset to May 11, 2017. On May 11 and June 20, 2017, the petition was ordered amended. (*Id.* at Docs. 113, 119).

20. a. In March 2017, Federal Bureau of Investigation Special Agent Nikki Badolato received reports from the United States Probation Office, including information from Probation Office forensic examiner Steven Holmes about the contents of the cell phones he examined that belonged to Nakia Phillips.

b. On March 16, 2017, Agent Badolato applied for a search warrant from Chief U.S. Magistrate Judge Nannette A. Baker to search a specifically identified ZTE cell phone, a specifically identified Sprint SIM card, and a 16 GB Samsung MicroSD Card. (Gov. Ex. 2; Doc. 37). In support of that application, Agent Badolato submitted her written, sworn affidavit. Her affidavit described the following facts. On September 8, 2016, the Farmington Police Department investigated Nakia Phillips following Phillips' arrest after his car crashed in a high speed police chase. In the inventory search of this car, three cell phones were found and seized, including the ZTE cell phone. Phillips had been convicted in 2012 of failure to register as a sex offender. His sentence included supervised release. One of the conditions of the supervised release was that the Probation Office was authorized to search Phillips's digital media. On February 6, 2017, Farmington Police Sergeant Tim Porter gave the Probation Office Phillips's three phones. District Judge John A. Ross had previously authorized the Probation Office, in the conditions of supervised release imposed on Phillips, to search the ZTE cell phone.

c. Agent Badolato's affidavit further stated that during the court-authorized forensic examination of Phillips' cell phone, the Probation Office recovered text message conversations that indicated that Phillips, the minor SJ, and another named person had had a sexual encounter, including a sexual assault. Further, the forensic examination revealed images of child pornography, which the affidavit specifically described. The Probation Office forensic examination also revealed conversations involving Phillips and illegal drug trafficking, human trafficking, and prostitution.

9

    d.  On March 16, 2017, at 4:00 p.m., Magistrate Judge Baker signed the search warrant authorizing the search of the cell phone and the related SIM card and MicroSD card. *See* Case No. 4:17 MJ 5093, Doc. 2 at 1.

  21.  Agent Badolato thereafter searched the cell phone and found images of child pornography that victim SJ identified as images of her.

  22.  On June 14, 2017, the federal grand jury indicted Nakia Phillips in the instant case for production of child pornography and for sexual trafficking of children. (No. 4:17 CR 273 RLW, Doc. 1). On October 11, 2017, further proceedings on the petition of the Probation Office in No. 4:12 CR 161 were reset to November 15, 2017. (No. 4:12 CR 161, Doc. 134).

## **DISCUSSION**

  In his motion, defendant argues that the information seized from the search of his cell phones should be suppressed, because the cell phones were searched without his consent and on February 6, 2017, without a warrant. More specifically, he argues: (1) Additional Supervised Release Term No. 8 (*see* Finding No. 2(c), above) did not authorize the non-consensual examination of defendant's cell phones; (2) the bases for the examinations of the cell phones depended upon the unverified credibility of alleged victim SJ; and (3) following the seizure of the cell phones by the police on September 8, 2016, the first federal search of the cell phones was by the Probation Office on February 6, 2017, without a warrant, five months after the seizure; and the second federal search was pursuant to Magistrate Judge Baker's search warrant on March 16, 2017, an additional five weeks later, both of which searches were unconstitutional because of the passage of time between the original seizure and the searches, *citing United States v. Place*, 462 U.S. 696 (1983). The government denies defendant's arguments.

  To decide defendant's arguments, we start with the Fourth Amendment, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated,

10

and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized.

U. S. CONST. amend IV.

Law enforcement first acquired defendant's cell phones on September 8, 2016, when the Farmington Police Department conducted a warrantless inventory search of his vehicle.  This inventory search occurred pursuant to police department policy and followed the warrantless arrest of Phillips after he led the police on a high speed car chase.  Prior to the time the police endeavored to question him and he sped away, the police had probable cause to believe Phillips had been engaged in serious violations of the law, including the use of a firearm by a felon, rape, and prostitution, as told to the police first hand by the alleged victim.  *See Beck v. Ohio,* 379 U.S. 89, 91 (1964) (probable cause to arrest without a warrant exists when the police have information sufficient to cause a reasonable person to believe that the defendant had committed an offense or was then committing an offense).

The police lawfully impounded Phillips' wrecked automobile, after it was forcibly stopped following the high speed pursuit and he was arrested.  *See* Rev. Stat. Mo. § 304.155 (granting law enforcement the authority to remove abandoned property from a public street to a place of safety); *South Dakota v. Opperman*, 428 U.S. 364, 368-72 (1976); *State of Missouri v. McDowell*, 519 S.W.3d 828, 832 (Mo. Ct. App. E.D. 2017). At the impound facility the police constitutionally conducted a warrantless inventory search of his vehicle at least in substantial part because of police department policy. *United States v. Arrocha*, 713 F.3d 1159, 1162-64 (8th Cir. 2013).  Knowing that the cell phones found in the vehicle were likely involved in the commission of serious crimes, because of the earlier statements of victim SJ, the police lawfully seized the cell phones from the vehicle without a warrant.

### **(1) Additional Supervised Release Term No. 8**

Defendant argues that Additional Supervised Release Term No. 8 (*see* Finding No. 2(c), above) did not authorize the non-consensual examination of his cell phones. This argument presents the issue of whether the government's extraction of information from Phillips' cell phones must comply with the warrant and probable cause strictures of the Fourth Amendment, because he had a reasonable expectation of privacy in the data in his cell phone. *Katz v. United States*, 389 U.S. 347, 360 (1967); *Oliver v. United States*, 466 U.S. 170, 177 (1984). This "expectation of privacy," to be constitutionally protected by the Fourth Amendment, has two components: first, it must both be subjectively espoused by its proponent, and second, objectively, be one that society agrees ought to be protected from government intrusion without the protection of the Fourth Amendment. *Oliver*, 466 U.S. at 177.

The objective component of Phillips' argued "expectation of privacy" is greatly diminished by his status as a federal supervised releasee. *Cf.*, *Samson v. California*, 547 U.S. 843, 851 (2006) (holding that state prison parolees, because of the very substantial limitations on them due to certain conditions of release, "have severely diminished expectations of privacy by virtue of their status alone."). In *Samson*, the Supreme Court determined that the Fourth Amendment did not prevent the State of California from conducting suspicionless searches of parolees. *Id.* at 854.

Before *Samson*, the Supreme Court had ruled in *United States v. Knights*, 534 U.S. 112 (2001), that the warrantless seizure of incriminating items from Knights' apartment was justified and reasonable under the Fourth Amendment, because Knights was known by the searching officer to be a state court probationer who was subject to a condition of probation that he submit his place of residence to a search anytime, with or without a warrant, and with or without reasonable cause, by a probation officer or a law enforcement officer. 534 U.S. at 114. Knights was aware of this probation condition, and the totality of the relevant circumstances "significantly diminished Knights' reasonable expectation of privacy." *Id.* at 119-20.

In the case at bar, defendant Phillips argues that his condition of supervised release No. 8, quoted above, did not cover his cell phones.  Therefore, he argues that the post-February 6, 2017, warrantless forensic examination of his cell phones by Steven Holmes on behalf of the Probation Office was unconstitutional.  The undersigned disagrees.

The term "computer" used in condition No. 8 is defined by common American parlance as "a programmable usually electronic device that can store, retrieve, and process data."  *See*  https://www.merriam-webster.com/dictionary/computer (defining "computer").  That cell phones were intended to be included in the Probation Office's authority to search a computer under Condition No. 8 "upon reasonable suspicion of contraband or evidence of a violation of a condition of release" is indicated by the wide variety of items that were expressly also subject to such a search, *i.e.*, "[releasee's] person, residence, office, computer, or vehicle."

Further, although original condition No. 9,

> 9.      The defendant shall not possess or use any audio/visual recording or producing equipment, a computer, peripheral equipment, gaming equipment, cellular devices, or any other device with access to any "on line computer services," or subscribe to or use any Internet service, at any location (including employment) without the written approval of the probation office.  If approval is given, the defendant shall consent to the probation office or probation service representative conducting unannounced examinations, including retrieval and copying of all data, of any computer(s) or computer related equipment to which the defendant has access, including web enabled cell phones and gaming systems to insure compliance with this condition and/or removal of such equipment for the purpose of conducting a more thorough inspection.

was not reimposed after the Court of Appeals ruling, its language was orally discussed by Judge Ross with Phillips on April 30, 2014, which clearly indicated that "web enabled cell phones" were within the court's zone of enhanced supervisory concern.

A reasonable person in Phillips's position as a federal supervised releasee would know, when the Probation Office's forensic examination of Phillips' cell phones occurred, that condition No. 8's use of the term "computer" included "cell phone."

13

Even if condition No. 8's use of "computer" did not include "cell phone," the information learned by the Probation Office from the forensic examination of Phillips' cell phones should not be suppressed, for several other reasons. First, before the Probation Office forensically examined the cell phones, they had already been forensically examined by Farmington Police Det. Porter on October 21, 2016 (*see* Finding No. 13), pursuant to an unchallenged state court search warrant. The state court search warrant was based upon a demonstration of probable cause found in Det. Porter's sworn, written affidavit. (*See* Finding No. 12). The information in the affidavit was provided first hand by SJ who was involved in Phillips' criminal activity. The information learned by Det. Porter in his examination of the cell phones led to Missouri state criminal charges against Phillips. (*See* Finding No. 13). Therefore, the information later learned by the Probation Office either had already been discovered through a source or process that was independent of the Probation Office's forensic examination (*i.e.*, Det. Porter's forensic examination), *see Murray v. United States*, 487 U.S. 533, 537 (1988), or, given law enforcement's knowledge of the information's prior existence, it could have inevitably been discovered through an independent, lawful process (also based on Det. Porter's forensic examination). *See United States v. Allen*, 713 F.3d 382, 387-88 (8th Cir. 2013).

### **(2)  Unverified credibility of SJ**

Defendant argues that District Judge Ross's imposition of condition No. 8 depended upon the unfounded veracity of victim SJ. As a matter of fact, Judge Ross's imposition of condition No. 8 did not depend upon the veracity of SJ. Rather, at the final supervised release revocation hearing held by Judge Ross, defendant admitted the violations upon which the revocation and the resentencing were founded. (*See* Finding No. 2(a)).

Defendant also argues that the information provided by SJ was considered by the Missouri Circuit Court in its October 21, 2016, finding of probable cause and issuance of a search warrant for the search of the cell phones. (Finding No. 13). When asked in the

14

suppression hearing about the SJ's veracity, Det. Porter testified that he knew of no information demeaning SJ's credibility.

Under *Franks v. Delaware,* 438 U.S. 154 (1978), if the government intentionally includes material, false statements in a warrant affidavit, or includes material, false statements with that reckless disregard for the truth that is the legal equivalent of intentional falsehood, the reviewing court must "set aside those statements and then review the remaining portions of the affidavits to see if what remain[s is] sufficient to establish probable cause."  *United States v. Garcia*, 785 F.2d 214, 222 (8th Cir. 1986). Defendant bears the burden of showing the intentional or reckless inclusion of false statements in a warrant affidavit. *Id.*.

Defendant Phillips has made no showing that the police in October 2016 knew of evidence that indicated SJ was reputed to be a liar and failed to provide this information in the state court search warrant affidavit.  Thus, he has failed in his *Franks* burden of showing that such was the case.

### (3) The passage of time between the seizure and the searches

Defendant argues that the searches of his cell phones on February 6 and March 16, 2017, were unconstitutional because of the lengths of the periods (approximately 5 months and 7 months, respectively) following their seizure on September 6, 2016.  For this argument he invokes the holding of the Supreme Court in *United States v. Place*, 462 U.S. 696 (1983).  *Place* does not require suppression of evidence in defendant's case.

In *Place*, federal drug agents at the Miami airport became suspicious of Place and spoke with him before his scheduled departure.  Because his departure time was near, the agents decided not to search his two items of baggage, which had already been checked, even though he had consented.  However, because the agents had acquired information that led them to suspect he was engaged in criminal drug activity, they passed the information on to federal agents in New York, Place's destination.  After he arrived and obtained his luggage there, federal agents approached Place and spoke with him.  Place refused their request for his consent to their search of his luggage.  The agents then told

15

him they were going to take the bags to a federal judge for a search warrant and Place could accompany them, if he wished.  Place declined, obtained contact information from the agents, and departed.  The agents took custody of the bags and ninety minutes later subjected the luggage to a sniff exam by a narcotics dog.  The dog reacted positively to one of the bags.  Because it was then late Friday afternoon, the agents secured the luggage over the weekend, and on Monday applied for, received, and executed a federal search warrant, finding a quantity of cocaine.  *Place*, 462 U.S. at 698-99.

In *Place* the district court denied a motion to suppress the contraband, concluding defendant's rights under *Terry v. Ohio*, 392 U.S. 1 (1968), were not violated.  On appeal, the Court of Appeals, assuming *Terry* applied, ruled that "the prolonged seizure of Place's luggage exceeded the permissible limits of a *Terry*-type investigative stop and consequently amounted to a seizure without probable cause in violation of the Fourth Amendment."  *Id.* at 700.  The Supreme Court affirmed.

The Supreme Court applied the *Terry* standard to the detention of property thus:

> In sum, we conclude that when an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope.

*Id.* at 706.  Because the Court determined that the dog sniff was not a search within the meaning of the Fourth Amendment, the Court considered whether, and determined that, the agents nevertheless effectuated a Fourth Amendment "seizure" of the luggage in the New York airport on Friday.  And they determined that this "seizure" of the luggage on Friday and then detaining the luggage until Monday when a search warrant was obtained, in the relevant circumstances "exceeded the permissible limits of a *Terry*-type investigative stop."  *Id.* at 709-10.

The ruling and opinion in *Place*, if applicable, would require this court to determine whether, when Phillips' cell phones were initially seized by law enforcement on September 8, 2016, there was probable cause to believe they contained evidence of

16

criminal activity. However, for the reasons that follow, the existence of probable cause is not a determinative factor in this case and the holding of *Place* is not applicable.

The constitutionality of the initial seizure of defendant's cell phones did not require reasonable suspicion to warrant further investigation under *Terry* or probable cause. Rather, the initial seizure was pursuant to a lawful, unchallenged inventory search, which did not require the presence of probable cause or reasonable suspicion. *See South Dakota v. Opperman*, 428 U.S. 364, 375 (1976). Even if probable cause was required, the police independently had probable cause to seize the phones: prior to the high-speed pursuit of defendant, victim SJ told Det. Porter that defendant had a ZTE phone in his car that he had used to create and store child pornography.

Defendant argues that even if the initial seizure of his phones was proper, it "became unreasonable" as a result of the duration between the seizure and the search. (Doc. 24). *See Segura v. United States,* 468 U.S. 796, 812 (1984) ("[A] seizure reasonable at its inception because based upon probable cause may become unreasonable as a result of its duration or for other reasons.").

A temporary seizure supported by probable cause and designed to prevent the loss of evidence may be reasonable as long as the police "diligently obtained a warrant in a reasonable period of time." *Illinois v. McArthur*, 531 U.S. 326, 334 (2001). To determine whether a delay is unreasonable, courts must "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." *Id.* at 331. Courts have identified several factors relevant to this inquiry: first, the significance of the interference with the person's privacy or possessory interest, *see United States v. Johns*, 469 U.S. 478, 487–88 (1985); *United States v. Mitchell*, 565 F.3d 1347, 1353 (11th Cir. 2009); second, the duration of the delay, *see Place*, 462 U.S. at 709; third, whether the person consented to the seizure, *see id.*; *United States v. Stabile*, 633 F.3d 219, 235-36 (3rd Cir. 2011); and fourth, the government's legitimate interest in holding the property as evidence, such as for legitimate investigate needs, *see United States v. Miller*, 20 F.3d 926, 931 (8th Cir. 1994); *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012).

17

First, although a person's possessory and privacy interest in his smart phone is significant, there is no evidence that defendant Phillips requested the return of the cell phones to him. Nor did he seek relief under Federal Rule of Criminal Procedure 41(g). *See United States v. Gregoire*, 638 F.3d 962, 968 (8th Cir. 2011) (holding that a defendant's complaint of interference with his possessory interest in a laptop was without merit because he did not seek redress under Fed. R. Crim. P. 41(g), and the one-year delay between the seizure and the search of his computer was reasonable).

Second, there were concurrent state and federal investigations of Phillips in this case. The federal investigators did not receive the cell phones until five months after their September 7 seizure. It appears that state and federal investigators diligently pursued the investigation. There was a seven-week delay between the seizure and the subsequent search by state law enforcement officials. The police were entitled to seize the phones pursuant to its inventory search of defendant's vehicle, and absent exigent circumstances it was required to obtain a warrant before searching the contents of the phones. *Riley v. California*, 134 S.Ct. 2473, 2493 (2014). The officers in Phillips' case complied with *Riley* and first obtained a warrant before searching the phones. The record indicates that the officers were conducting an ongoing investigation between September 8, 2016, the date of the inventory search, and October 21, 2016, the date the search warrant was obtained. Criminal charges were filed against defendant in state court in the interim between the state investigator's search of the phones and the transfer of the phones from state to federal custody in February 2017. Six weeks after receiving the phones from state agents, federal agents applied for and obtained a search warrant.

In other contexts, a delay might lead to loss of materials or memories, *see, e.g., United States v. Miller*, 20 F.3d 926, 931-32 (8th Cir. 1994), but no evidence indicates that such was a risk with Phillips' cell phones. Nothing indicates that probable cause to believe evidence of child pornography on the cell phones no longer existed at the time they were forensically analyzed. The delay had no effect on the probable cause determination. *See United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009). Additionally, release of the phones to defendant in the interim between the seizure and

18

the search warrant would have given him the opportunity to destroy evidence. *See Riley*, 134 S.Ct. at 2486 ("[O]nce law enforcement officers have secured a cell phone, there is no longer any risk that the arrestee himself will be able to delete incriminating data from the phone.")

Thus, any delay in the search of the cell phones did not adversely affect Phillips' legitimate Fourth Amendment interests. The Eighth Circuit has upheld a one-year delay from the seizure of a laptop to its subsequent search by federal officials. *Gregoire*, 638 F.3d at 967-68. In this case, there was a seven-week period between the seizure and the subsequent search by state law enforcement officials, and a six-week period between the receipt of the phones by federal agents and their application for a federal search warrant. In the facts and circumstances of this case, there was no unreasonable delay.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the oral motion of the United States for a determination by the court of the admissibility or not of any arguably suppressible evidence (Doc. 18) **is denied** as mooted by the proceedings held on the defendant's motions to suppress.

**IT IS HEREBY RECOMMENDED** that the motions of defendant Nakia Phillips to suppress evidence (Docs. 17, 24) **be denied.**

The parties have 14 days to file written objections to this Order and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

/s/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on November 6, 2017.